```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
INTEROCEAN COAL SALES, LDC,                      |
                                                 |
                        Plaintiff,               |
                                                 |
        -against-                                |    11 Civ. 0940 (NRB)
                                                 |
EVONIK TRADING GmbH, an alien corporation,       |
EVONIK DEGUSSA CORPORATION, an Alabama           |
corporation, EVONIK INDUSTRIES, AG, an alien     |
corporation, and EVONIK STEAG GmbH, an alien     |
corporation,                                     |
                                                 |
                        Defendants.              |
------------------------------------------------------------------ X
```

## ANSWER OF EVONIK TRADING GMBH AND EVONIK STEAG GMBH AND COUNTERCLAIM OF EVONIK TRADING GMBH

Defendants Evonik Trading GmbH ("Evonik Trading") and Evonik Steag GmbH ("Evonik Steag") (collectively, "Defendants"), by their undersigned attorneys, hereby set forth their answers to the allegations in Plaintiff Interocean Coal Sales, LDC's ("Plaintiff") Complaint as follows:

### OVERVIEW

1.  Defendants admit, upon information and belief, the allegations contained in the first sentence of paragraph 1.  In response to the allegations contained in the second sentence of paragraph 1, Defendants admit that Evonik Trading is a subsidiary of Evonik Steag and state that Evonik Industries, AG ("Evonik Industries") indirectly owns a minority interest in Evonik Steag.  Defendants admit the allegations contained in the third sentence of paragraph 1.  In response to allegations contained in the fourth sentence of paragraph 1, Defendants admit that in May 2008 Evonik Trading reached an agreement with Plaintiff, the terms of which speak for themselves,

regarding the purchase and sale of coal.  Defendants deny any and all remaining allegations of paragraph 1.

2.      In response to the allegations of paragraph 2, Defendants admit that in May, June, and November 2010, Plaintiff delivered coal purchased by Evonik Trading.  Defendants further admit that the sulfur content of those cargoes was (1) below 0.6% for the May 2010 cargo, (2) below 0.6% for the June 2010 cargo, and (3) between 0.6% and 0.8% for the November 2010 cargo.  Defendants deny any and all remaining allegations of paragraph 2.

3.      In response to the allegations contained in the first sentence of paragraph 3, Defendants admit that Evonik Trading notified Plaintiff that the sulfur content of the June 2010 coal cargo was below the minimum level agreed to by the parties.  Defendants deny any and all remaining allegations of paragraph 3.

## THE PARTIES

4.      Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 4, and the same are therefore denied.

5.      Defendants admit the allegations of paragraph 5.

6.      In response to the allegations of paragraph 6, Defendants admit that Evonik Degussa Corporation ("Evonik Degussa") is (1) an Alabama corporation that does business in New York and New Jersey and (2) an indirect subsidiary of Evonik Industries, AG ("Evonik Industries").  Defendants deny any and all remaining allegations of paragraph 6.

7.      Defendants admit the allegations of paragraph 7.

8.      Defendants admit the allegations of paragraph 8.

## JURISDICTION AND VENUE

9.      Defendants admit that this Court has subject matter jurisdiction over this case. Defendants deny any and all remaining allegations of paragraph 9.

10.     Defendants admit that venue is proper in this Court. Defendants deny any and all remaining allegations of paragraph 10.

## ADDITIONAL FACTS

11.     In response to the allegations of paragraph 11, Defendants admit that in October 2009, Evonik Trading and Plaintiff agreed that Evonik Trading would provide a letter of awareness to Plaintiff. Defendants deny any and all remaining allegations of paragraph 11.

12.     In response to the allegations of paragraph 12, Defendants admit that on February 17, 2010, Evonik Industries sent a letter of awareness to Plaintiff (the "Letter of Awareness"), the terms of which speak for themselves. Defendants deny all remaining allegations of paragraph 12 to the extent they are inconsistent with the terms of the Letter of Awareness.

13.     Defendants deny the allegations of paragraph 13. Further, Defendants state that the terms of the domination and profit and loss pooling agreements (the "DPLP Agreements") referred to in the Letter of Awareness speak for themselves.

14.     Defendants deny the allegations of paragraph 14.

15.     In response to the allegations contained in the first sentence of paragraph 15, Defendants admit that the DPLP Agreements were executed before May 2008. Further, Defendants state that the terms of the DPLP Agreements speak for themselves. Defendants deny all remaining allegations of paragraph 15 to the extent they are inconsistent with the terms of the DPLP Agreements.

LEGAL02/32584230v1

16.     Defendants deny the allegations contained in the first sentence of paragraph 16. Further, Defendants state that the DPLP Agreements referenced in the Letter of Awareness consist of two separate agreements: (1) one between Evonik Steag and Evonik Trading and (2) another between Evonik Industries and Evonik Steag. In response to the allegations contained in the second sentence of paragraph 16, Defendants admit that on December 20, 2010, Evonik Industries sent Plaintiff a letter stating that the DPLP Agreement between Evonik Industries and Evonik Steag would be terminated after December 31, 2010 (the "December 20, 2010 Letter"). Further, Defendants state that the terms of the December 20, 2010 Letter and the DPLP Agreements speak for themselves. Defendants deny all remaining allegations of paragraph 16 to the extent they are inconsistent with the terms of the December 20, 2010 Letter, DPLP Agreements, or applicable German law.

17.     Defendants deny the allegations of paragraph 17.

18.     Defendants deny the allegations of paragraph 18.

19.     In response to the allegations of paragraph 19, Defendants admit that the parties executed a document entitled "Contract No. 00001" with an effective date of May 20, 2008. Further, Defendants state that "Contract No. 00001," which purports to memorialize the terms of the May 2008 agreement between Plaintiff and Evonik Trading for the purchase and sale of eight coal cargoes, was executed by Plaintiff on January 19, 2010, and by Evonik Trading on January 20, 2010. Further, Defendants state that the terms of the contract between Plaintiff and Evonik Trading speak for themselves. Defendants deny all remaining allegations of paragraph 19 to the extent they are inconsistent with the terms of the contract between Plaintiff and Evonik Trading.

- 5 -

20.     In response to the allegations of paragraph 20, Defendants admit that Plaintiff and Evonik Trading agreed to certain quality specifications for the coal provided by Plaintiff. Further, Defendants state that the terms of the contract between Plaintiff and Evonik Trading speak for themselves.  Defendants deny all remaining allegations of paragraph 20 to the extent they are inconsistent with the terms of the contract between Plaintiff and Evonik Trading.

21.     In response to the allegations of paragraph 21, Defendants admit that Plaintiff and Evonik Trading agreed to certain sulfur-content specifications for the coal provided by Plaintiff. Further, Defendants state that the terms of the contract between Plaintiff and Evonik Trading speak for themselves.  Defendants deny all remaining allegations of paragraph 21 to the extent they are inconsistent with the terms of the contract between Plaintiff and Evonik Trading.

22.     In response to the allegations of paragraph 22, Defendants admit that, among other things, clause 3 of "Contract No. 00001" gave Evonik Trading the option to reject any coal cargo having a total sulfur content greater than 1.0%.  Further, Defendants state that the terms of the contract between Evonik Trading and Plaintiff speak for themselves.  Defendants deny all remaining allegations of paragraph 22 to the extent they are inconsistent with the terms of the contract between Plaintiff and Evonik Trading.

23.     Defendants admit, upon information and belief, the allegations of paragraph 23 except that Defendants deny that the total sulfur content of the May 22, 2010 cargo (the "M/V Matrix cargo") was 0.44%.

24.     In response to the allegations of paragraph 24, Defendants admit that Evonik Trading accepted delivery of the M/V Matrix cargo, paid Plaintiff in full for that cargo, and has not asserted a claim against Plaintiff based on the failure of the M/V Matrix cargo to meet the sulfur specifications to which the parties agreed.  Further, Defendants state that Plaintiff knew

that Evonik Trading resold the M/V Matrix cargo to a party that did not require coal with a minimum sulfur content. Defendants deny any and all remaining allegations of paragraph 24.

25. Defendants admit, upon information and belief, that Plaintiff loaded the M/V Aquagem with 135,003.52 MT of steam coal for Evonik Trading's account on June 18, 2010, and further admit that the M/V Aquagem cargo had a sulfur content of 0.44%. Defendants deny any and all remaining allegations of paragraph 25.

26. In response to the allegations of paragraph 26, Defendants admit that Evonik Trading notified Plaintiff that the sulfur content of the M/V Aquagem cargo was below the contractual minimum level of 0.6% on July 20, 2010. Defendants deny any and all remaining allegations of paragraph 26.

27. In response to the allegations of paragraph 27, Defendants admit that on August 4, 2010, Gregory J. Mulligan sent Plaintiff a letter (the "August 4, 2010 Letter") requesting the initiation of good-faith negotiations concerning Plaintiff's failure to deliver coal with the contractually-required sulfur content. Further, Defendants state that the terms of the August 4, 2010 Letter speak for themselves. Defendants deny all remaining allegations of paragraph 27 to the extent they are inconsistent with the terms of the August 4, 2010 Letter.

28. In response to the allegations of paragraph 28, Defendants admit that the August 4, 2010 Letter bore the logo of Evonik Industries and the address of Evonik Degussa. Further, Defendants state that the terms and letterhead of the August 4, 2010 Letter speak for themselves. Defendants deny all remaining allegations of paragraph 28 to the extent they are inconsistent with the terms of the August 4, 2010 Letter.

29. In response to the allegations of paragraph 29, Defendants admit that the August 4, 2010 Letter stated that Evonik Trading would seek to enforce its legal rights and

remedies if Plaintiff refused to honor its contractual obligation to negotiate in good faith. Further, Defendants state that the terms of the August 4, 2010 Letter speak for themselves. Defendants deny all remaining allegations of paragraph 29 to the extent they are inconsistent with the terms of the August 4, 2010 Letter.

30. In response to the allegations of paragraph 30, Defendants admit that Evonik Trading had the right under New York law to deduct $2,479,271.98 from its payment to Plaintiff for the November 2010 M/V Cape Frontier cargo. Defendants deny any and all remaining allegations of paragraph 30.

31. In response to the allegations of paragraph 31, Defendants admit that after the August 4, 2010 Letter, Evonik Trading and Plaintiff discussed the sulfur content of the M/V Aquagem cargo but failed to reach an agreement as to whether that sulfur content met the specifications of the parties' contract. Defendants deny any and all remaining allegations of paragraph 31.

32. Defendants admit, upon information and belief, the allegations of paragraph 32.

33. In response to the allegations of paragraph 33, Defendants admit that Evonik Trading sent Plaintiff a letter on November 17, 2010 (the "November 17, 2010 Letter") providing notice of Evonik Trading's intent to deduct $2,479,271.98 from its payment for the November 2010 (M/V Cape Frontier) cargo based on costs associated with blending the nonconforming M/V Aquagem cargo. Further, Defendants state that the terms of the November 17, 2010 Letter speak for themselves. Evonik Trading denies all remaining allegations of paragraph 33 to the extent they are inconsistent with the terms of the November 17, 2010 Letter.

LEGAL02/32584230v1

34.     In response to the allegations of paragraph 34, Defendants state that Evonik Trading paid $13,569,529.02 to Plaintiff on November 19, 2010.  Evonik Trading denies any and all remaining allegations of paragraph 34.

## PLAINTIFF'S CAUSES OF ACTION
### (Breach of Contract, Breach of Guaranty, and Account Stated)

35.     Defendants hereby incorporate their responses to paragraphs 1 through 34 as if fully set forth herein.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants deny the allegations of paragraph 37.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by Plaintiff's own failure to fulfill its contractual obligations to Evonik Trading.  Specifically, Plaintiff breached its obligations by failing to deliver coal to or on behalf of Evonik Trading that met the quality specifications in the parties' contract.  Additionally, Plaintiff breached its obligations by failing to pay demurrage owed to Evonik Trading for two coal cargoes delivered in 2010.

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands because Plaintiff knowingly failed to perform its contractual obligation to Evonik Trading to provide coal with a sulfur content of at least 0.6% before it asserted a claim for breach of the parties' contract against Defendants.

**Fourth Affirmative Defense**

Assuming that Defendants are liable to Plaintiff in this action, which is denied, Defendants are entitled to a reduction in the amount of damages owed to Plaintiff. Defendants incorporate by reference paragraphs 4 through 28 of Evonik Trading's Counterclaim set forth below. The amount of reduction or setoff is equal to at least the amount of $427,261.62, representing the demurrage owed by Plaintiff less the despatch owed by Evonik Trading, plus interest. Accordingly, Defendants plead setoff in defense to Plaintiff's action.

**COUNTERCLAIM OF EVONIK TRADING**

Defendant/Counterclaim-plaintiff Evonik Trading GmbH ("Evonik Trading") states the following counterclaims against Plaintiff/Counterclaim-defendant Interocean Coal Sales, LDC ("Plaintiff"):

**PARTIES AND JURISDICTION**

1. Evonik Trading is a corporation organized and existing under the laws of Germany with its principal place of business in Essen, Germany.

2. Upon information and belief, Plaintiff is a limited duration company organized and existing under the laws of the Cayman Islands with its principal place of business in Vestavia Hills, Alabama.

3. This Court has jurisdiction over the Counterclaim asserted herein pursuant to 28 U.S.C. § 1367 and consistent with F.R.C.P. 13(a) and 13(b).

## FACTUAL ALLEGATIONS

**Background**

4. In early 2008, Evonik Trading and Plaintiff began discussing the possibility of Evonik Trading purchasing from Plaintiff one or more cargoes of Colombian coal mined by Plaintiff's affiliate, Drummond Coal Sales, Inc. For several months thereafter, representatives of Evonik Trading and Plaintiff participated in meetings, telephone calls, and email exchanges to negotiate the terms of their potential deal.

5. On May 21, 2008, Evonik Trading faxed Plaintiff two letters that confirmed an agreement reached the previous day for the purchase of four cargoes of coal—two for delivery in 2009 and two for delivery in 2010.

6. On May 28, 2008, Evonik Trading faxed Plaintiff a third letter to confirm an agreement reached that day for the purchase of four additional coal cargoes in 2010.

7. Among other things, all three of these letters or "trade confirmations" specifically confirmed the parties' agreement concerning the required sulfur content of the purchased coal: "0.6-0.8% (max 1%)."

8. True and correct copies of the May 2008 trade confirmations are attached hereto as Exhibit A.

9. Subsequently, the parties entered into a written contract intended to memorialize their May 2008 agreement for the purchase and sale of eight cargoes of coal. The written contract was dated May 20, 2008, but was signed almost two years after that date—by Plaintiff on January 19, 2010, and by Evonik Trading on January 20, 2010.

**Loading and Demurrage Terms in the Parties' Contract**

10. Under the terms of the parties' contract, the shipping vessel for each coal cargo could be provided or chartered by Evonik Trading or, if Evonik Trading resold the coal it purchased from Plaintiff, by Evonik Trading's customers.  Regardless of who chartered the vessels, Evonik Trading was responsible for notifying Plaintiff of (1) the identity of each vessel selected to transport the coal cargo from Plaintiff's port of dispatch in Colombia to its destination and (2) when appropriate, the readiness of the vessel for loading.

11. In shipping contracts or charter agreements, the time allowed for loading or unloading cargo on a vessel is commonly called "laytime."  The amount of laytime depends on the tonnage of the vessel and the guaranteed rate of loading of the port selected by the parties.  If loading operations exceed the allowed laytime, then the ship owners may lose opportunities to obtain other jobs.  Accordingly, charter agreements often provide for payment of liquidated damages to compensate the ship owners for lost opportunities during the excess laytime or "time on demurrage."  These liquidated damages are known as "demurrage" or "demurrage fees."  Alternatively, if loading is completed prior to the expiration of the allowed laytime, then the ship owners have more time to obtain other jobs.  Most charter agreements thus require the ship owners to pay "despatch" or "despatch fees" to the chartering party to account for laytime saved.

12. In this case, Evonik Trading (or its customers if the cargoes were resold) had contractual obligations to pay demurrage for any excess laytime to the ship owners hired to transport the coal provided by Plaintiff.  Alternatively, if loading operations were completed before expiration of the allowed laytime, then Evonik Trading (or its customers if the cargoes were resold) would be entitled to despatch for any laytime saved.

13. Under the terms of the parties' contract, Plaintiff agreed to reimburse Evonik Trading for demurrage associated with delays or excess laytime caused by Plaintiff or Plaintiff's contractors. To that end, the contract provided that after delivery of each cargo, Evonik Trading would submit its laytime calculation to Plaintiff setting forth the number of hours of laytime lost (or saved) that were chargeable to Plaintiff. Once Plaintiff reviewed and accepted the laytime calculation, Plaintiff was required to pay Evonik Trading demurrage equal to the hours of excess laytime chargeable to Plaintiff multiplied by the "demurrage rate" (which was set by the ship owner).

14. The parties' contract also provided for payment of despatch by Evonik Trading. Specifically, for cargoes loaded early, Evonik Trading agreed to pay Plaintiff despatch equal to the hours of laytime saved that were chargeable to Plaintiff multiplied by half of the demurrage rate.

15. The parties further agreed that for each cargo, demurrage or despatch would be settled promptly after receipt of Evonik Trading's laytime calculations together with all relevant supporting documentation.

**Plaintiff's Failure to Pay Demurrage for Two Cargoes**

16. In violation of the terms of the parties' contract, Plaintiff has failed and refused to pay Evonik Trading demurrage it owes for the delayed loading of two coal cargoes. Specifically, Plaintiff failed to pay demurrage on the cargoes loaded onto the (1) M/V Nordweser vessel on November 27, 2010, and (2) M/V Navios Felicity vessel on December 4, 2010.

17. On March 4, 2011, Evonik Trading sent Plaintiff its laytime calculation for the M/V Nordweser cargo showing demurrage owed in the amount of $220,342.71.

18. One week later, Plaintiff responded that it had "checked and agree[d]" to Evonik Trading's laytime calculation and demurrage amount of $220,342.71.

19. True and correct copies of Evonik Trading's laytime calculation for the M/V Nordweser and the foregoing email exchange between Evonik Trading and Plaintiff regarding that calculation and the demurrage owed are attached hereto as Exhibit B.

20. Despite accepting Evonik Trading's laytime calculation for the M/V Nordweser cargo, Plaintiff has refused Evonik Trading's demand for payment and failed to pay any portion of the $220,342.71 demurrage owed for that cargo.

21. Similarly, on April 6, 2011, Evonik Trading sent Plaintiff its laytime calculation for the M/V Navios Felicity cargo showing demurrage owed in the amount of $228.827.25.

22. The following day, Plaintiff responded that it had "checked and agree[d]" to Evonik Trading's laytime calculation and demurrage amount of $228.827.25.

23. True and correct copies of Evonik Trading's laytime calculation for the M/V Navios Felicity and the foregoing email exchange between Evonik Trading and Plaintiff regarding that calculation and the demurrage owed are attached hereto as Exhibit C.

24. Despite accepting Evonik Trading's demurrage calculation for the M/V Navios Felicity cargo, Plaintiff has refused Evonik Trading's demand for payment and failed to pay any portion of the $228,827.25 demurrage owed for that cargo.

25. On March 17, 2011, Evonik Trading sent Plaintiff its laytime calculation for the M/V C. Harmony cargo showing despatch owed to Plaintiff in the amount of $84,766.08.

26. On March 24, 2011 Plaintiff responded that it disagreed with Evonik Trading's laytime calculation and submitted an alternative laytime calculation showing despatch owed for the M/V C. Harmony cargo in the amount of $21,908.34.

27. On April 26, 2011, Evonik Trading indicated its willingness to pay the despatch amount of $21,908.34 based on Plaintiff's laytime calculations for the M/V C. Harmony cargo. As Evonik Trading explained, it must receive an invoice from Plaintiff in order to process payment of the despatch.

28. Despite agreeing to issue an invoice for the despatch owed to Plaintiff, to date, Plaintiff has not provided any such invoice.

29. True and correct copies of the foregoing email exchange and Plaintiff's laytime calculations showing despatch in the amount of $21,908.34 for the M/V C. Harmony cargo are attached hereto as Exhibit D.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

30. Evonik Trading realleges and incorporates herein by reference paragraphs 1 through 29 above.

31. Plaintiff and Evonik Trading entered into a valid and enforceable contract providing for, among other things, Plaintiff's payment of demurrage to Evonik Trading for delayed loading of coal cargoes purchased by Evonik Trading.

32. Evonik Trading fulfilled all conditions precedent to the payment of demurrage by Plaintiff under the terms of the parties' contract.

33. More than reasonable time for payment of demurrage for the M/V Nordweser and M/V Navios Felicity cargoes has passed, and Plaintiff has failed and refused to pay such demurrage.

34. Accordingly, Plaintiff has breached its contract with Evonik Trading by failing to pay total demurrage of $449,169.96, and Evonik Trading has been damaged in at least the amount of

$427,261.62 (reflecting the $449,169.96 owed to Evonik Trading for demurrage less the $21,908.34 due Plaintiff for despatch), plus interest.

## SECOND CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

35. Evonik Trading repeats and re-alleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

36. The contract between Plaintiff and Evonik Trading contains an implied covenant of good faith and fair dealing.

37. As set forth above, Plaintiff accepted Evonik Trading's laytime calculations and the demurrage amounts for the M/V Nordweser and M/V Navios Felicity cargoes but failed and refused to pay Evonik Trading the demurrage owed for those cargoes.

38. Plaintiff's intentional failure to pay the demurrage owed constitutes a breach of Plaintiff's implied covenant of good faith and fair dealing which includes the obligation not to withhold the benefits of the parties' contract from Evonik Trading.

39. Evonik Trading is entitled to damages for Plaintiff's breach of the implied covenant of good faith and fair dealing in at least the amount of $427,261.62 (reflecting the $449,169.96 owed to Evonik Trading for demurrage less the $21,908.34 due Plaintiff for despatch), plus interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Defendants respectfully requests that this Court:

1. Deny Plaintiff any relief whatsoever;

2. Dismiss Plaintiff's Complaint with prejudice;

3. Enter judgment against Plaintiff in at least the amount of $427,261.62, plus interest;

4. Award Defendants costs and attorneys' fees of this action against Plaintiff; and

5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 16th day of May, 2011.

          ALSTON & BIRD LLP

          By: /s/Mark Vasco
            Mark Vasco
            Alexander S. Lorenzo

          90 Park Avenue
          New York, New York 10016
          Phone: (212) 210-9400
          Fax: (212) 210-9444
          Email: alexander.lorenzo@alston.com

          101 S. Tryon St., Suite 4000
          Charlotte, North Carolina 28280
          Phone: (704) 444-1000
          Fax: (704) 444-1111
          Email: mark.vasco@alston.com

          *Attorneys for Defendants Evonik Trading GmbH and Evonik Steag GmbH*

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing ANSWER OF EVONIK TRADING GMBH AND EVONIK STEAG GMBH AND COUNTERCLAIM OF EVONIK TRADING GMBH with the Clerk of the Court using the CM/ECF system which will send email notification of such filing to counsel of record for all parties on this 16th day of May, 2011.

    /s/Mark Vasco
Mark Vasco
ALSTON & BIRD LLP
101 S. Tryon St., Suite 4000
Charlotte, North Carolina  28280
Phone: (704) 444-1000
Fax: (704) 444-1111
Email: mark.vasco@alston.com